**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT HOSSFELD and CHRIS BILEK, individually and on behalf of others similarly situated, | ) ) ) | Case No. 1:20-cv-06566 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) ) | Hon. Judge Virginia M. Kendall |
| | ) | Hon. Mag. Judge Jeffrey I. Cummings |
| NORVAX, LLC and GOHEALTH, LLC, | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

This is a lawsuit seeking class status on behalf of 19 total putative class members spread across three putative classes. Despite the size of the classes—which would not satisfy even the numerosity threshold to class certification—defense counsel is in the process of reviewing over 30,000 pages of documents in a good faith attempt to prepare a production in response to Plaintiffs' overbroad discovery requests. Yet, still unsatisfied, Plaintiffs filed a 33-page motion to compel that misses the mark.

In the last discovery-related communication exchanged between the parties before Plaintiffs filed their motion, Defendants' counsel indicated to Plaintiffs' counsel that, despite Defendants' proper objections, Defendants would supplement their discovery responses. Plaintiffs' counsel clearly received this email, as he attached it to his motion to compel. (*See* Dkt. 21-3, p. 1) But instead of waiting to see the supplemental responses he requested—which render moot the majority of Plaintiffs' complaints—Plaintiffs chose to file their motion to compel before even seeing Defendants' supplemental responses and production.

Be all that as it may, Plaintiffs' motion raises issues that have been rendered moot by Defendants' supplemental discovery responses and production of thousands of pages of

documents, that were never properly raised by Plaintiffs in the parties' meet and confer,[1] and, most importantly, that are based on Plaintiffs' indefensibly overbroad requests, which cannot be described as anything other than a fishing expedition. Plaintiffs' motion should be denied.

## I.    FACTUAL SUMMARY

This matter arises out of three alleged telephone calls, none of which were placed by Defendants.

### A.    THE ALLEGED CALLS TO PLAINTIFFS.

The first Plaintiff, Chris Bilek, alleges that he received a spoofed, prerecorded telephone call on August 31, 2020 from telephone number (708) 816-0400 (the "Bilek Call").[2] (Dkt. 1, ¶ 24) The message did not identify any specific entity, but ultimately connected Bilek to an individual who apparently referenced GoHealth after Bilek indicated his interest in purchasing health insurance. (*Id.*, ¶¶ 24-28) Based on these allegations, Bilek asserts causes of action arising under the federal Telephone Consumer Protection Act ("TCPA") as well as the Illinois Automatic Telephone Dialers Act ("ATDA") and seeks to represent several classes of individuals who he believes received similar calls. (*Id.*, ¶ 47)

The second plaintiff, Robert Hossfeld, alleges that he received two calls from telephone number 512-879-1914 – one on March 4, 2019 and another two days later on March 6 (together, the "Hossfeld Calls"). (*Id.*, ¶¶ 15-23) Hossfeld contends that the March 6 caller identified itself

---

[1] This is not the first time Plaintiffs' counsel has moved to compel before complying with L.R. 37.2. *See, e.g., Gurzi v. Penn Credit Corp.*, No. 6:19-cv-823, 2019 U.S. Dist. LEXIS 229559, at *1-2 (N.D. Ill. Dec. 30, 2019) (denying motion to compel because Plaintiffs' counsel did not comply with L.R. 37.2); *Lowe v. CVS Pharm., Inc.*, No. 14-cv-3687, 2016 U.S. Dist. LEXIS 189609, at *4 (N.D. Ill. May 23, 2016) (noting Plaintiffs' counsel's failure to comply with L.R. 37.2).

[2] Bilek also alleges that he received "additional prerecorded calls from GoHealth," but did not provide any specifics of those calls such as the dates he received them, the Caller ID numbers, or any facts that would connect these alleged calls to Defendants. (*Id.*, ¶ 36)

as Allied Insurance Partners, asked him "numerous" qualifying questions, and then transferred

him to an individual who identified her employer as GoHealth and tried to sell him a

UnitedHealthcare insurance policy.  (*Id.*, ¶¶ 15-18)  On the basis of these allegations, Hossfeld

claims that Defendants violated the National Do Not Call Registry provisions of the TCPA (47

C.F.R. § 64.1200(c)(2)) and seeks to represent a class of all similarly situated persons.  (*Id.*, ¶ 47)

**B.**   **DISCOVERY REVEALS THAT DEFENDANTS DID NOT PLACE ANY OF THE CALLS TO PLAINTIFFS.**

The parties' investigation quickly revealed that the Defendants did not place any of the

alleged calls.  Instead, as it turns out, unbeknownst to Defendants, a company called Core

Alliance Interactive Solutions, Inc.  ("Core Alliance") placed the call to Plaintiff, Bilek.  After

placing the call, Core Alliance then transferred the call to an entity called Kolor Marketing, LLC

("Kolor"), which, in turn, transferred the call to GoHealth.  (*See* Kolor Subpoena Response,

attached as Exhibit A)

The same thing happened with the March 6 Hossfeld call (there is no indication of the

March 4 Hossfeld call ever being transferred to GoHealth).  The parties' investigation has

revealed that, unbeknownst to Defendants, the March 6 Hossfeld call originated from a lead sold

by a company called Aux Media ("Aux Media"), to a company called InsideResponse, LLC

("InsideResponse"), which, in turn, eventually placed and transferred the March 6 call to

GoHealth.  (*See* GoHealth000027, attached as Exhibit B)

Defendants work with a number of independent marketing affiliates from whom they

purchase leads of individuals interested in purchasing health insurance.  Kolor and

InsideResponse are two such affiliates.  Critically, these entities are not Defendants' agents.

They are not permitted to market Defendants' products, use the company's trademarks, or

otherwise represent that they are acting on behalf of Defendants.  (*Id.*, §§ 1.2 and 5.3)  Their

respective contracts do not require them to develop leads in any particular manner. (*See, e.g.,* Dkt. 21-2, pp. 19-20) In fact, many of the leads these entities ultimately sell to Defendants are generated through *inbound* calls. To the extent any of the independent marketing affiliates choose to sell to Defendants leads that were developed by way of outbound calling, Defendants strictly require that such leads be generated in full compliance with the TCPA. (*See, e.g.,* Dkt 21-4, § 4.8(a) and Dkt. 21-5, § 4.8(d)) And this is not an empty threat. If Defendants ever receive a telemarketing-related complaint, they identify the lead source and cease purchasing outbound leads from that source until it can prove its operations are TCPA compliant. (Dkt. 21-2, p. 14)

## C.   DISCOVERY REVEALS THAT A TOTAL OF 19 CALLS FALL INTO THE PUTATIVE CLASSES.

Unlike Kolor and InsideResponse, independent marketing affiliates with whom Defendants had contracts, the entities that actually caused the calls at issue here—Aux Media and Core Alliance—are complete strangers to Defendants. Defendants had no contracts with these entities, did not know that these entities placed or originated the calls to Plaintiffs, and did not even know that these entities existed before this case. (*See, e.g.,* Defendants' Supplemental Written Discovery Responses, pp. 44-45, attached as Exhibit C)

The parties' investigation into these entities has, however, already revealed several interesting points. To begin with, Kolor determined that Core Alliance hand-dialed Bilek's number by accident—with the agent in question, who was looking at a sheet of numbers to dial, inadvertently combining the first six digits of one number with the last four digits of another. (*See* Ex. A) In total, nine phone numbers were apparently transferred from Core Alliance, to Kolor, and finally to GoHealth. And, other than for the inadvertently mixed-up phone number for Plaintiff Bilek, Kolor already produced TrustedForm Certificates evidencing consent for the

other eight calls Core Alliance dialed that Kolor eventually transferred to GoHealth.  (*See* Kolor Marketing Inc.0001-18, attached as Exhibit D)

The Hossfeld story is similar.  InsideResponse's investigation has revealed that Aux Media first transferred the Hossfeld lead to InsideResponse on March 4, 2019.  (Ex. B, at GoHealth000032)  InsideResponse then attempted to transfer him to GoHealth and to another company to whom InsideResponse also sells leads.  (*Id.*, at GoHealth000027)  InsideResponse subsequently learned that Aux Media misrepresented the source of the Hossfeld lead and immediately terminated its relationship with Aux Media.  (*Id.*, at GoHealth000032)  The number of transfers from Aux Media to InsideResponse and subsequently to GoHealth totaled ten.  (*Id.*, at GoHealth000027)

In short, altogether, Core Alliance and Aux Media originated 19 outbound calls that Kolor and InsideResponse eventually transferred to GoHealth.  And that puts Plaintiffs' motion to compel in the proper context.  Given putative classes that discovery has already shown to be too small to even satisfy the numerosity requirement, Plaintiffs have embarked on a fishing expedition seeking to discover every call ever placed or transferred to GoHealth in an attempt to save their putative class action.  (*See, e.g.,* Dkt. 21-2, p. 6)  That is improper.

D.  **UNSATISFIED WITH WHAT DISCOVERY HAS ALREADY SHOWN, PLAINTIFFS SEEK DISCOVERY INTO NEW POTENTIAL CLAIMS AND CLAIMANTS.**

Defendants served their responses to Plaintiffs' written discovery requests on March 1. Plaintiffs' counsel requested a meet and confer for the following day via email, ostensibly to address the production schedule and whether Defendants were withholding documents pursuant to their objections.  (Dkt. 21-3, pp. 2-4)  But Plaintiffs' counsel warned that the meeting was a mere "courtesy" before Plaintiffs would file a motion to compel.  (*Id.*, p. 2)

During the meet and confer, the parties addressed four issues: (1) whether Defendants were withholding information pursuant to objections; (2) production of class data; (3) the timeline for production; and (4) de-designation of information in the Kolor and InsideResponse contracts. (Dkt. 21-3, p. 1) As indicated in the email attached to Plaintiffs' motion, on March 9, Defendants acceded to two of Plaintiffs' requests, agreeing to provide supplemental responses clarifying whether any documents were being withheld and de-designating the two contracts.[3] (*Id.*)

Plaintiffs, however, never responded to Defendants' March 9 email. Instead, they filed a 33-page motion, arguing, among other things, that the Court should compel Defendants to "redo" their responses. (Dkt. 21, p. 11) Notwithstanding Plaintiffs' chosen course of action, Defendants produced over 2,200 documents and agreed to supplement their responses, indicating clearly for which discovery requests Defendants were withholding documents on the basis of their objections. (*See* Ex. C, Supplemental Responses to RFPs 1, 2, 6, 9, 11, 13, 14, 19, 21-27, and 29) Accordingly, Defendants' supplemental responses and initial production of documents have mooted many of the issues that Plaintiffs prematurely raised in their motion to compel. What is left are patently overbroad requests, including three interrogatories seeking information concerning all calls ever placed by or transferred to Defendants (Dkt. 21-2, pp. 6-12) and a request for Defendants' internal do-not-call list even though neither Plaintiff claims to have received a call while being on Defendants' internal do-not-call list. (*Id.*, p. 28)

---

[3] Defendants, still in the process of reviewing thousands of pages of documents and searching for others, were not able to provide a definite deadline for the production of documents. (*Id.*) That said, Defendants indicated that they would make an initial production within a few weeks and would update Plaintiffs as their search progressed. (*Id.*) As explained in detail below, Defendants would not agree to produce class data because Plaintiffs' request for class data went far beyond the scope of any classes Plaintiffs could represent and sought irrelevant personal identifying information of putative class members. (*See infra* §§ III(A)(1) and (2))

It bears noting that, beyond simply being indefensibly overbroad, Plaintiffs' sweeping requests for information concerning all calls transferred to, or placed by, Defendants would also require Defendants to produce commercially valuable information identifying their customers. If this information were ever publicly disclosed, it would be available to Defendants' competitors, who could then solicit Defendants' customers. Moreover, because these requests are not tailored to a subset of calls sharing common characteristics, Defendants would have to develop and execute countless search queries to identify responsive information. These risks and burdens cannot be justified under the present circumstances, and especially not where discovery has already shown that, at best, Plaintiffs could represent classes comprising a total of 19 call recipients. Accordingly, Plaintiffs' requests cannot be described as anything other than a recognition that, to continue the case, they now need to try to find other claims, plaintiffs, and classes. (*See, e.g.,* Dkt. 21, p. 21 (noting that Plaintiffs "intend to compare Defendants' do-not-call list to the class call data, to identify violations."))[4]

For these reasons, the Court should deny Plaintiffs' motion and focus discovery on Plaintiffs' claims and the 19 putative class members they could actually represent.

## II.  LEGAL STANDARD

Broad discovery rules "were never intended to be an excursion ticket to an unlimited exploration of every conceivable matter that captures an attorney's interest," and "[d]iscovery of matter not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1)." *Henman v. Ind. Harbor Belt R.R. Co.*, No. 2:14-CV-434, 2015 U.S.

---

[4] Plaintiffs have already used discovery to fish for new claims, issuing subpoenas to AT&T seeking call records for plaintiffs' phone numbers that did not place or receive any of the calls alleged in the Complaint. (*See* AT&T subpoenas and email from Plaintiffs' counsel, attached as Exhibit E). *See also Ossola v. Am. Express Co.*, No. 13-cv-4836, 2015 U.S. Dist. LEXIS 117531, at *13 (N.D. Ill. Sept. 3, 2015) (noting that Plaintiffs' counsel cannot use discovery to develop new claims.)

Dist. LEXIS 144018, at *4-5 (N.D. Ind. Oct. 22, 2015) (citations omitted).  It is the requesting

party's responsibility to craft appropriate requests, "limited in scope so as to be 'relevant to any

party's claim or defense and proportional to the needs of the case.'"  *Scholz v. United States*,

2018 U.S. Dist. LEXIS 95599, at *7 (E.D. Wisc. June 7, 2018) (citing Fed. R. Civ. P. 26(b)).

"[T]he courts are unanimous in prohibiting discovery from being used as a 'fishing expedition.'"

*BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2018 U.S. Dist.

LEXIS 26386, at *9 (N.D. Ill. Feb. 20, 2018).

  Rule 37 provides that "[a] party seeking discovery may move for an order compelling an

answer, designation, production, or inspection" if "a party fails to answer an interrogatory

submitted under Rule 33" or "a party fails to produce documents or fails to respond that

inspection will be permitted—or fails to permit inspection—as requested under Rule 34."  Fed.

R. Civ. P. 37(a)(3)(B).  However, "[t]he motion must include a certification that the movant has

in good faith conferred or attempted to confer with the person or party failing to make disclosure

or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).

### III. <u>ARGUMENT</u>

  Plaintiffs' broad, far-reaching discovery requests seek documents and information not

likely to lead to the discovery of admissible evidence related to Plaintiffs' claims.  Plaintiffs

received calls originating from two entities—with whom Defendants have no business

relationship—and now seek discovery into numerous aspects of Defendants' business operations

to determine if there may be other individuals with TCPA claims based on calls made by

unrelated, as-yet-to-be-identified third and fourth parties.  But Plaintiffs' fishing expedition in

this regard is improper and unwarranted, as Plaintiffs are only entitled to discovery relating to

claims they have pled – not claims they hope to plead in the future on behalf of additional

plaintiffs. Moreover, given that Plaintiffs' claims could only potentially incorporate a class of 19 persons, their discovery requests are disproportionate to the needs of the case.

As for the discovery relating to Plaintiffs' actual claims, Defendants agreed—prior to the filing of Plaintiffs' motion—that they would provide revised discovery responses that clarify whether any documents are being withheld and would produce responsive documents on a rolling basis. Defendants have now done so, thereby rendering moot the remainder of Plaintiffs' motion. For all of these reasons, Plaintiffs' motion to compel should be denied.

## A. PLAINTIFFS ARE ENGAGING IN A FISHING EXPEDITION.

Plaintiffs have brought this litigation against Defendants based on calls they received from parties that had no relationships with Defendants. Plaintiffs' claims derive from calls that originated from two specific chains of contact that only produced 19 calls that were transferred to Defendants. Perhaps recognizing that putative classes containing 10 and 9 individuals are not sufficient to satisfy numerosity, Plaintiffs seek discovery into broad classes of individuals who received calls, regardless of the entities that originated the calls or the entities' relationship with Defendants. In order to accomplish this, Plaintiffs seek to obtain discovery to determine (1) what other entities may have made calls that ended up being transferred to Defendants, and (2) which individuals received those calls. The scope of this discovery, and the burden it would entail, are staggering, but even more problematically, are improper, as Plaintiffs cannot utilize discovery to determine whether other claims exist or the identities of other individuals who may have those claims.

### 1. PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY CONCERNING OTHER INDEPENDENT MARKETING AFFILIATES.

Plaintiffs seek documents and information relating to every entity that has done business with Defendants and every call that those entities have transferred to Defendants. (*See, e.g.*,

Interrogatory Nos. 1-5, 10, RFPs 3-5, 8, 12, 17-19.)  But these discovery requests are unrelated to the claims asserted by Plaintiffs, and it is well-established that discovery may not to be used as a fishing expedition to determine whether additional claims exist.  *See Ossola v. Am. Express Co.*, No. 13-cv-4836, 2015 U.S. Dist. LEXIS 117531, at *13 (N.D. Ill. Sept. 3, 2015) (noting that Plaintiffs' counsel is not entitled to discovery to develop new claims).  By seeking discovery in the hope that Plaintiffs will find violations of the TCPA by entities other than those involved with the actual telephone calls Plaintiffs received, Plaintiffs are engaging in such impermissible discovery.  Accordingly, the scope of Plaintiffs' discovery requests should be limited to the relevant telephone calls that originated from Core Alliance and Aux Media.

Plaintiffs seem to believe that because they seek class certification, they are somehow entitled to the entire universe of records related to marketing of Defendants' products for the last four years, including communications and data from or related to numerous independent contractors.  Plaintiffs are mistaken.  In other, similar putative class actions, courts have limited discovery to the campaign, alleged agent(s), or lead generator(s) at issue.  Courts have made clear that discovery must be constrained by the actual allegations made by a plaintiff.  *See, e.g.*, *Mora v. Zeta Interactive Corp.*, No. 1:16-cv-00198, 2017 U.S. Dist. LEXIS 19413, at *12-14 (E.D. Cal. Feb. 10, 2017) (denying as a fishing expedition request for production of records relating to calls made by entities other than the entity that called plaintiff); *Mey v. Enterprise Financial Group, Inc.*, No. 2:15-cv463-FTM-99MRM, 2016 U.S. Dist. LEXIS 188389, at *11-12 (M.D. Fla. July 27, 2016) (denying plaintiff's motion to compel seeking documents and information beyond the scope of the single telemarketer actually at issue in the case, explaining: "There are no allegations in the Class Action Complaint concerning telemarketers other than NRP.  Thus, Plaintiff failed to meet her initial burden of showing that information from

telemarketers other than NRP is relevant to a claim or defense in this case."). *See also Bagg v. USHEALTH Group, Inc. et al.*, No. 6:15-cv-1666-ORL-37GJK, ECF 76 (M.D. Fla. July 26, 2016) (denying plaintiffs' motion to compel to the extent it sought information relating to agents other than the agent that was alleged to have sent the fax at issue).

Plaintiffs here have brought allegations relating to calls that involved two chains of entities: Kolor and Core Alliance, and InsideResponse and Aux Media. As the courts did in *Mora*, *Mey*, and *Bagg*, Plaintiffs' discovery requests should be limited to only these entities that were involved in the calls made to Plaintiffs. The other entities involved in transferring calls to Defendants have no relationship to the claims and defenses in this case, and the scope of discovery sought is not proportional to the needs of the case. *See Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-cv-02436, 2019 U.S. Dist. LEXIS 198880, at *10 (N.D. Ill. Nov. 15, 2019) ("Relevancy and proportionality are limits placed on discovery in order to ensure that when a party seeks information, there is some basis to believe it will bear fruit and lead to admissible evidence at a trial."). To hold otherwise would subject Defendants to the unwarranted burden of searching their business records for sensitive data regarding so-called "classes" that Plaintiffs could never be a part of. The Court should therefore limit all of the requests to include only documents pertaining to the lead generators that relate to this case.

2.    PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY INTO ADDITIONAL CLAIMS, CLASSES, AND PLAINTIFFS.

Just as Plaintiffs are not entitled to discovery into unrelated marketing affiliates, they are also not entitled to discovery into unrelated claims, classes and plaintiffs. Yet Plaintiffs seek to do exactly that, requesting call records for all calls ever placed by or transferred to Defendants. (*See, e.g.,* Interrogatory Nos. 1-3) "Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be

seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." *DeJesus v. Cigna Corp.*, No. 6:17-cv-1208, 2017 U.S. Dist. LEXIS 209777, at *5 (M.D. Fla. Dec. 21, 2017) (citations omitted).

Here, there can be no doubt that Plaintiffs intend to use call records to attempt to identify other potential plaintiffs, given that they could otherwise only pursue claims relating to calls that originated from Core Alliance and Aux Media. *See Osseola*, 2015 U.S. Dist. LEXIS 117531, at *25-26 ("The problem here is that the named plaintiffs, having only been called by West, cannot serve as a representative of a class of individuals who had been called by Amex."). In essence, Plaintiffs' discovery is a fishing expedition to determine if there are other individuals with claims or other calling parties against whom claims may be asserted. This type of discovery is improper; Plaintiffs may only seek discovery relating to the claims they have asserted. *See id.*, at *25-26 (denying discovery into defendant's calling records where plaintiffs were called by a third party, noting that "Plaintiffs have not provided any authority—or even argument— demonstrating they are entitled to class discovery without a single adequate plaintiff . . . it bears repeating that fishing for a client is not a permissible purpose of discovery.").

This reasoning only makes sense, as Plaintiffs would not be able to bring claims on behalf of class members who received calls under different circumstances, from other entities. *See Hirsch v. USHealth Advisors, LLC,* 337 F.R.D. 118, 132 (N.D. Tex. 2020) (denying certification where "[t]he calls forming the basis of the putative class came from over 20,000 Agents, each with a different relationship to USHA. The potential differences in control prove fatal to certification."); *see also Brodsky v. HumanaDental Ins. Co.*, 910 F.3d 285, 291 (7th Cir. 2018) ("we do not know what kind of pre-existing arrangement may have existed between Humana and the other fax recipients that Brosky wants to represent. These are the hallmarks of

12

an issue that requires individual scrutiny.").  Accordingly, Defendants have appropriately limited

their discovery responses to documents and information relating to the entities that were

responsible for placing calls to Plaintiffs.

Additionally, with respect to data relating to calls made by the entities involved in the

calls to Plaintiffs, Defendants submit that Plaintiffs are not entitled to the personal identifying

information relating to those call recipients.  Disclosure of the call recipients' identities serves no

purpose at this stage of the litigation other than to facilitate communication between Plaintiffs'

counsel and those individuals, which, as discussed above, is improper.  Indeed, numerous courts

have precluded TCPA plaintiffs from obtaining class member identity information on this basis.

*See, e.g., Hankinson v. R.T.G. Furniture Corp.,* No. 15-81139, 2016 U.S. Dist. LEXIS 40365, at

*6-7 (S.D. Fla. Mar. 28, 2016); *see also Ketch, Inc. v. Heubel Material Handling, Inc.*, No. 11-

cv-12, 2011 U.S. Dist. LEXIS 111300, at *4 (W.D. Okla. Sept. 28, 2011).  Accordingly,

Plaintiffs are not entitled to discover—prior to class certification—the identities of the 19

recipients who allegedly received calls originating from Aux Media or Core Alliance.

### 3.  PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY CONCERNING DEFENDANTS' DO-NOT-CALL LIST.

For similar reasons, Plaintiffs are not entitled to discovery relating to Defendants'

internal DNC lists, as requested in RFPs 9-10, 12-14.  Put simply, Plaintiffs have not asserted

that they were ever called while their numbers were on Defendants' internal DNC list; indeed,

Plaintiffs admit that this discovery will be used to determine whether any violations of

Defendants' internal DNC policies occurred.  *See* Dkt. 21, p. 21.  As noted above, Plaintiffs are

not entitled to discovery unrelated to the Plaintiffs' claims that will be used as a fishing

expedition to identify additional claims or claimants.  *See Wood v. Wood,* No. 18 C 629, 2018

U.S. Dist. LEXIS 190794, at *4 (N.D. Ill. Nov. 7, 2018) ("To the extent Plaintiff is seeking

discovery with her Motion that she hopes will animate a new claim against Defendant, that also is not a proper subject of discovery in this case.").

**B.    THE REMAINING ISSUES RAISED BY PLAINTIFFS ARE NOT RIPE.**

As noted above, at the parties' meet and confer, counsel discussed a handful of issues, and Defendants committed to producing documents and providing supplemental discovery responses.  Plaintiffs nevertheless brought their motion, not simply addressing the issues discussed between the parties, but also raising issues that were not raised at the meet and confer conference.  As just a few examples, Plaintiffs posit that Defendants have "appear[ed]" to have restricted their responses to certain requests (*see* Dkt. 21, p. 28) and that it is "likely" that Defendants do not know if documents responsive to certain requests exist (*id.*, p. 26).  If Plaintiffs had discussed these concerns at the meet and confer, they would have the answers to their questions, but they did not. Plaintiffs' motion as it pertains to these issues should therefore be denied.[5]  *See Gurzi*, 2019 U.S. Dist. LEXIS 229559, at *1-2 (denying motion to compel over 20 discovery requests because Plaintiffs' counsel did not satisfy their L.R. 37.2 obligations).

**C.    DEFENDANTS AGREED TO, AND DID, SUPPLEMENT THEIR DISCOVERY RESPONSES.**

A substantial portion of Plaintiffs' motion is dedicated to their complaint that Defendants' discovery responses do not indicate whether responsive documents or information will be provided.  Prior to the filing of the motion, however, Defendants agreed to, and did, provide supplemental responses addressing the precise complaint raised by Plaintiffs—indicating with specificity for which requests documents are being withheld based on objections, and for which requests documents are not being withheld.  (Ex. C, pp. 21-49)  Accordingly, Plaintiffs'

---

[5] Other requests, such as RFP No. 6—which Plaintiffs edited in their motion to make it slightly more comprehensible—were difficult to understand if not completely unintelligible.  Instead of conferring with Defendants and clarifying these requests, Plaintiffs moved to compel.

motion to compel further responses on this basis should be denied as moot. *See 7E Fit Spa Licensing Grp., LLC v. 7EFS of Highlands Ranch, LLC*, No. 1:15-cv-01109, 2016 U.S. Dist. LEXIS 194884, at *27-28 (S.D. Ind. Oct. 21, 2016) (denying motion to compel where defendant agreed to provide supplemental discovery responses).

## IV.    CONCLUSION

For the foregoing reasons, Defendants request that Plaintiffs' motion to compel be denied.

Date:  April 20, 2021            **NORVAX, LLC and GOHEALTH, LLC**

By: *Seth H. Corthell*
One of its attorneys

Martin W. Jaszczuk
Seth H. Corthell
JASZCZUK P.C.
30 S. Wacker Dr., Suite 2200
Chicago, Illinois 60606
Telephone: 312-442-0509
mjaszczuk@jaszczuk.com
scorthell@jaszczuk.com

*Attorneys for Defendants GoHealth, LLC and Norvax, LLC*

15

## <u>CERTIFICATE OF SERVICE</u>

I, Seth H. Corthell, an attorney, certify that I caused the foregoing to be served upon all persons and entities registered and authorized to receive such service through the Court's Case Management / Electronic Case Files (CM/ECF) system on this April 20, 2021.

<u>*s/ Seth H. Corthell*                           </u>